UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| I.P., by and through B.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 4:23-CV-26-KAC-SKL |
| | ) | |
| TULLAHOMA CITY SCHOOLS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This action is before the Court on a (1) "Motion for Judgment on the Pleadings" [Doc. 50] filed by Defendants Jason Quick and Derrick Crutchfield and (2) "Motion to Dismiss and for Judgment on the Pleadings" [Doc. 52] filed by Defendant Tullahoma City Schools. For the reasons below, the Court **GRANTS** the Motion filed by Defendants Quick and Crutchfield and **GRANTS in PART and DENIES in PART** Defendant Tullahoma's Motion.

## I.   Background

On May 22, 2022, Plaintiff I.P. was a rising junior at Tullahoma High School, a public high school [*See* Doc. 36 ¶ 26-27, 11]. Defendant Tullahoma City Schools ("Tullahoma") "is a school district" that includes Tullahoma High School [*Id.* at ¶ 11].

Tullahoma High School "distributes a Student and Parent/Guardian Handbook" [*Id.* ¶ 46]. "The policy in place" "during the 2022-2023 school year [] provided":

> Any student who records and/or disseminates in any manner an unauthorized or misrepresented photograph, video, or recording for the purpose of embarrassing, demeaning, or discrediting the reputation of any student or staff, or that results in the embarrassment, demeaning, or discrediting of any student or staff, or results in any action or activity disruptive to the educational process shall be subject to disciplinary action up to and including suspension or expulsion at the discretion of the principal.

> Any student violating this policy's restrictions may have the device confiscated and be subject to disciplinary action at the principal's discretion . . . This action may include out-of-school suspension.

[*Id.* ¶ 47 (omission in original) (the "Social Media Policy")]. "The Handbook provides no guidance to students or parents regarding what constitutes material 'embarrassing, demeaning, or discrediting the reputation' of another" [*Id.* ¶ 48].

The Handbook also contained the "Wildcat Policy," which provided that "[u]sing social media by a student 'unbecoming of a Wildcat' may result in discipline, including suspension or removal" from activities [*See id.* ¶ 51]. "The Handbook provides no guidance to students or parents regarding what constitutes a social media post 'unbecoming of a Wildcat'" [*Id.* ¶ 52].

Defendant Quick was the principal of Tullahoma High School [*Id.* ¶ 12]. Plaintiff "view[ed] Defendant] Quick as presenting himself to students in an unnecessarily serious manner" [*Id.* ¶ 25]. So, "[o]n May 22, 2022, from his father's home in Alabama during the summer vacation," Plaintiff "posted an image" originally "created by another user to [his] personal Instagram" intending to "lampoon[] [Defendant] Quick's overly serious demeanor" [*Id.* ¶ 27].

The image showed Defendant Quick "holding a box of fruit and vegetables" [*Id.* ¶ 28]. "Another poster" had "added text 'My brotha' to the image" [*Id.* ¶ 29]. Plaintiff "saved that post and added text 'like a sister but not a sister'" purportedly "to suggest a close friendship between [him] and [Defendant] Quick and to provide a humorous contrast to [Defendant] Quick's overly serious demeanor towards" students [*See id.*]. Plaintiff also "added the text 'On god' to the image," purportedly intending "to signify a speaker's firm belief in a message" [*Id.* ¶ 30].

"On June 9, 2022, during a family vacation to Italy," Plaintiff "reposted an image created by another user to his personal Instagram page showing [Defendant] Quick as an anime cat, with whiskers, cat ears, and wearing a dress" [*Id.* ¶ 31]. "The image includes the text 'Neko quick'"

2

purportedly "because 'Neko' means cat in Japanese" [*Id.* ¶ 32]. Plaintiff "reposted the image" allegedly to "provide a satirical commentary on [Defendant] Quick's desire to be seen by students as a serious and professional administrator" [*Id.* ¶ 34].

The posts continued into the school year. "On August 2, 2022, while at home" during Plaintiff's junior year, he "posted an image to his personal Instagram account showing [Defendant] Quick's head superimposed on a hand-drawn cartoon meant to resemble a character from the online game Among Us" [*Id.* ¶ 35]. The post shows "a cartoon bird named Mordecai, from the Cartoon Network series Regular Show" "clinging to [Defendant] Quick's leg" [*Id.*]. Plaintiff included "the text 'Nooo Jason Don't Lea ve Me'" in the post to allegedly "provid[e] a satirical commentary on [Defendant] Quick's desire to be seen by students as a serious and professional academic administrator" [*Id.* ¶ 36].

Images of the Instagram posts are below.

  

On August 10, 2022, Plaintiff's band teacher informed Plaintiff that he "needed to go to the Tullahoma High School front office" after class [*Id.* ¶ 57]. "After arriving in the front office," the band teacher escorted Plaintiff "to [Defendant] Quick's private office where [Defendants] Quick and [Defendant Assistant Principal] Crutchfield were waiting" [*Id.* ¶ 59]. Defendant Quick told Plaintiff "[w]e can do this the easy way, or we can do this the hard way" and that the "easy way" would be "to tell the truth" [Doc. 36 ¶¶ 60-62]. Defendant Quick questioned Plaintiff "about the three Instagram images [Plaintiff] posted" [*Id.* at ¶ 65]. Plaintiff "admitted he posted/reposted the images" [*Id.* ¶¶ 66].

Plaintiff and Defendant Crutchfield then went to Defendant Crutchfield's private office, without Defendant Quick [*Id.* ¶¶ 70, 71]. There, Defendant Crutchfield informed Plaintiff that he "would receive a five-day, out-of-school suspension" [*Id.* ¶¶ 71, 72]. "Upon information and belief," Defendant Quick "was personally involved in the suspension by instructing Crutchfield to suspend" Plaintiff "for posting the [Instagram] images" [*Id.* ¶ 74].

On August 12, 2022, Defendant Crutchfield reduced Plaintiff's suspension from five (5) days to three (3) [*See id.* ¶¶ 99-100]. Tullahoma High School "did not experience material disruption or substantial disorder due to" Plaintiff's Instagram posts [*Id.* ¶ 41]. "Upon information and belief, Tullahoma High School did not receive complaints from students or staff about the posts, classes were not cancelled or interrupted due to the posts, and no one reported feeling harassed or threatened by the posts" [*Id.* ¶ 43]. "Upon information and belief," Defendant Tullahoma "had not received information which would have led it to reasonably forecast a material disruption" or "substantial disorder" [*Id.* ¶ 45].

On September 21, 2023, Plaintiff filed his "Amended Complaint," raising nine (9) claims under 42 U.S.C. § 1983 for alleged violations of the First and Fourteenth Amendments to the

United States Constitution [Doc. 36]. Claim One is a First Amendment free speech claim against Defendants Quick and Crutchfield seeking monetary damages [*See id.* at 21-26]. Claim Two is a First Amendment retaliation claim against Defendant Quick seeking monetary damages [*See id.*at 26-27]. Claim Three is a Fourteenth Amendment procedural due process biased decisionmaker claim against Defendants Quick and Crutchfield seeking monetary damages [*See id.* at 27-30].

Plaintiff raises Claims Four through Eight against Defendant Tullahoma. Claim Four is a First Amendment free speech claim seeking monetary damages [*See id.* at 30-32]. Claim Five is a First Amendment free speech claim related to the Social Media Policy, seeking as relief "a declaration" that (1) "the Social Media Policy violates the First Amendment" and (2) Tullahoma's "suspension" of Plaintiff "based on the Social Media Policy violated the First Amendment" and "an injunction expunging" Plaintiff's suspension [*See id.* at 32-34]. Claim Six is a First and Fourteenth Amendment free speech vagueness claim related to the Social Media Policy and Wildcat Policy, seeking as relief "a declaration" that (1) "the Social Media Policy and Wildcat Policy are unlawfully vague and therefore violate the First and Fourteenth Amendments" and (2) Plaintiff's suspension "based on the Social Media Policy violates the First and Fourteenth Amendments" and "an injunction expunging" Plaintiff's suspension [*See id.* at 34-37]. Claim Seven is a First Amendment free speech claim related to the Social Media Policy and Wildcat Policy, seeking as relief "a declaration" that (1) "the Social Media Policy and Wildcat Policy" are "overbroad" and therefore violate the First Amendment and (2) Plaintiff's suspension "based on the Social Media Policy violated the First Amendment" and "an injunction expunging" Plaintiff's suspension [*See id.* at 37-39]. Claim Eight is a Fourteenth Amendment procedural due process biased decisionmaker claim, premised on the actions described in Claim Three, seeking

"a declaration" that Plaintiff's "suspension violated the Fourteenth Amendment" and an "injunction expunging his suspension" [*See id.* at 39-40].

Claim Nine is a Fourteenth Amendment procedural due process "*Post Hoc* Justification" claim against "All Defendants," seeking "declaratory and injunctive relief against the School District's suspension" of Plaintiff [*See id.* at 41-43]. Plaintiff pled Claim Nine against "All Defendants" [*See id.* at 42]. But it appears that Plaintiff only meant Claim Nine to be against Defendant Tullahoma [*See* Doc. 51 at 23 n. 11 ("Counsel for Plaintiff has informed that the *post hoc* justification claim was meant to be asserted only against the school")].

Defendants Quick and Crutchfield filed a "Motion for Judgment on the Pleadings" [Doc. 50], arguing that they are entitled to qualified immunity on all claims against them [Doc. 50 at 1]. Defendant Tullahoma filed a "Motion to Dismiss and for Judgment on the Pleadings" [Doc. 52]. Defendant Tullahoma argues that (1) Claims Five, Six, and Seven are moot and should, therefore, be dismissed and (2) it is entitled to judgment on the pleadings as to Claims Four, Eight, and Nine [*See* Doc. 52].

The Court subsequently ordered Plaintiff and Defendant Tullahoma to file supplemental briefing addressing whether Claims Five, Six, and Seven are moot in light of record evidence that Plaintiff's suspension had been permanently expunged from his record and he had graduated from Tullahoma High School [*See* Doc. 92 at 2-3]. Defendant Tullahoma confirmed that Plaintiff graduated from Tullahoma High School in May 2024 and that "Plaintiff's suspension has been permanently expunged from his record" [Doc. 102 at 2 (citing Doc. 102-1 ¶ 4 (Stephens Decl.))]. Plaintiff stated that he graduated in May 2024 and has started college [Doc. 103 at 3]. And he agreed that if his "suspension is permanently and irrevocably removed from his record" and "the suspension will remain expunged even in the event of a final judgment for Defendants," then

"Claims Five, Six, and Seven are now moot" [Doc. 103 at 3].

## II. <u>Legal Standard</u>

With a caveat not applicable here, the Court assesses a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings using the familiar Rule 12(b)(6) standard. *See United Food & Com. Workers, Local 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022). To survive a Rule 12(c) motion, a complaint must "contain[] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[C]onstruing the complaint in the light most favorable to the nonmoving party," the Court determines "whether the allegations contain factual content" allowing the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Boyle v. Ford Motor Co.*, No. 23-1452, 2024 WL 1406401, at *2 (6th Cir. April 2, 2024) (citations omitted). The Court generally rejects all matters outside of the pleadings. *See Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 484 (6th Cir. 2020).

The Sixth Circuit has "repeatedly cautioned" that "it is generally inappropriate" for a district court to decide an official's "entitle[ment] to qualified immunity" at the Rule 12 stage. *See Anders v. Cuevas*, 984 F.3d 1166, 1175 (6th Cir. 2021). But "this is only a 'general preference,' not an absolute" rule. *See Siefert v. Hamilton Cnty.*, 951 F.3d 753, 761-62 (6th Cir. 2020) (citing *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019)). And this general preference gives way where, as here, "the precise factual basis" for the relevant claims are not "hard to identify." *See Guertin*, 912 F.3d at 917 (citing *Pearson v. Callahan*, 555 U.S. 223, 238-39 (2009)). Indeed, "despite the general preference to save qualified immunity for summary judgment, sometimes it's best resolved" earlier if the complaint itself "establishes the defense." *See Siefert*, 951 F.3d at 762 (citing *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016)).

In contrast, Rule 12(b)(1) provides that the Court may dismiss a claim for "lack of subject

matter jurisdiction." *See* Fed. R. Civ. P. 12(b)(1). The Court lacks subject matter jurisdiction over a claim that is moot. *See, e.g., Rice v. Vill. of Johnstown*, 30 F.4th 584, 594 (6th Cir. 2022) (citation omitted). Where, as here, a party levies a factual attack on subject matter jurisdiction over a claim, the Court gives "no presumptive truthfulness" to the relevant allegations in the complaint. *See Howard v. City of Detroit*, 40 F.4th 417, 422 (6th Cir. 2022) (citation omitted). The Court is "free to weigh the evidence and satisfy itself" that a claim does, or does not, present a live case or controversy. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citation omitted).

### III. <u>Analysis</u>

Section 1983 "allows plaintiffs to sue a defendant who 'subjects' them 'to the deprivation' of their 'rights' if the defendant acts 'under color of any statute, ordinance, regulation, custom, or usage, of any State.'" *See Mackey v. Rising*, 106 F.4th 552, 558 (6th Cir. 2024) (quoting 42 U.S.C. § 1983). A state's political subdivision, however, "may be held liable only for its *own* acts," not "for an injury inflicted solely by its employees or agents." *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1038 (6th Cir. 2024) (cleaned up). To establish a municipality's liability for the acts of an employee, a complaint "must connect" the employee's conduct "to a municipal policy or custom." *See id.* (quotation marks omitted). In practice, a complaint "must demonstrate one of the following: '(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'" *Id.* (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). "A plaintiff then must also demonstrate that, through its *deliberate* conduct, the municipality was the moving force behind the injury alleged." *Id.* (quotations and citations omitted).

8

## A. Defendants Quick And Crutchfield Are Entitled To Qualified Immunity As To Claims One, Two, and Three.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). "[T]o determine whether an official is entitled to qualified immunity," the Court applies "a two-prong test." *Burnett v. Griffith*, 33 F.4th 907, 911 (6th Cir. 2022). **First**, the Court "questions whether the facts, 'taken in the light most favorable to the party asserting the injury, . . . show that the officer's conduct violated a constitutional right.'" *Id.* (quoting *Jones v. Clark Cnty.*, 959 F.3d 748, 766 (6th Cir. 2020)). **Second**, the Court determines "whether the right is clearly established." *Id.* Because "there is no 'rigid order of battle,'" the Court "may resolve a qualified immunity defense under" either prong. *Cunningham v. Blackwell*, 41 F.4th 530, 536 (6th Cir. 2022) (citing *Pearson*, 555 U.S. 234).

### i. The Rights Alleged In Claims One and Two Were Not Clearly Established At The Time Of The Purported Violations.

As to Claims One and Two, Defendants Quick and Crutchfield are entitled to qualified immunity because the Amended Complaint fails to allege the violation of a First Amendment right that was cleared established by August 2022. Claim One asserts that Defendants Quick and Crutchfield violated Plaintiff's "First Amendment rights when they suspended [him] for engaging in nondisruptive off-campus expression" and "discriminat[ed] against [Plaintiff] based on his viewpoint" [Doc. 36 ¶¶ 142, 153]. Claim Two, premised on the same underlying conduct, alleges that Defendant Quick unconstitutionally retaliated against Plaintiff by suspending him because of his "protected First Amendment expression" [*Id.* ¶ 160].

9

To be clearly-established, the "contours of" a right must be "sufficiently clear that 'a reasonable officer in the defendant's position should have known his conduct violated that right.'" *See Ramsey v. Rivard*, 110 F.4th 860, 866 (6th Cir. 2024) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000)). The Court considers the law "at the time of the challenged conduct." *See Campbell v. Riahi*, 109 F.4th 854, 860 (6th Cir. 2024) (citing *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)); *see also Tarter v. Metro. Nashville Airport Auth.*, No. 22-5421, 2023 WL 5322418, at *5 (6th Cir. Aug. 18, 2023). Out-of-circuit decisions are "usually irrelevant to the 'clearly established' inquiry." *See Ashford v. Raby*, 951 F.3d 798, 804 (6th Cir. 2020). "The only exception is for 'extraordinary' cases where out-of-circuit decisions 'both point *unmistakably* to' a holding and are 'so clearly foreshadowed by applicable direct authority as to leave *no doubt*' regarding that holding." *Id.* (quoting *Ohio Civil Serv. Emps. Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988)).

Here, the conduct alleged in Claims One and Two did not violate a First Amendment right that was clearly established in August 2022. In August 2022, the contours of a student's First Amendment right to speech off-campus that targets a school administrator was unsettled. Plaintiff contends that four cases, taken together, clearly established Plaintiff's right to "lampoon," "satirize," or otherwise target Defendant Quick in Plaintiff's Instagram posts [*See, e.g.*, Doc. 36 ¶¶ 135, 152 (citing *Tinker v. Des Moines Ind. Cmty. Sch. Dist.*, 393 U.S. 503, 514 (1969); *Mahanoy Area Sch. Dist. v. B.L. by and through Levy*, 594 U.S. 180, 189-90 (2021); *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 207 (3d Cir. 2011) (en banc); *see also* Doc. 57 at

10

38-40 (citing *J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, 650 F.3d 915 (3d Cir. 2011) (en banc))].  None of these fits the bill.

Start with *Tinker*.  *Tinker* did not involve off-campus speech at all, let alone the specific question of off-campus student speech that singles out a school administrator.  *See Tinker*, 393 U.S. at 504.  Where *Tinker* noted that a student's rights were not "embraced merely in the classroom," the Supreme Court was describing other activities a student might engage in on "campus during the authorized hours."  *See id.* at 512-13.  *Tinker* did not confront or address the factual context here.  *See Mahanoy*, 594 U.S. at 196 (Alito, J., concurring) ("Our cases involving the regulation of student speech have not directly addressed [off-campus speech].  All those cases involved either in-school speech or speech that was tantamount to in-school speech.").

Similarly, Plaintiff's reliance on two fractured en banc decisions from the Third Circuit—*Layshock* and *J.S. ex rel. Snyder*—is misplaced.  These cases do not overcome the "general rule against using out-of-circuit caselaw in the 'clearly established inquiry.'"  *See Burnett*, 33 F.4th at 913 (citing *Ashford*, 951 F.3d at 804).[1]  *Layshock* and *J.S. ex rel. Snyder* are not "'extraordinary' cases" that "'both point *unmistakably* to' a holding and are 'so clearly foreshadowed by applicable direct authority as to leave *no doubt*' regarding that holding."  *See Ashford*, 951 F.3d at 804 (citation omitted).  *Layshock* did not decide *Tinker*'s potential application to off-campus speech or define the specific contours of that right, despite calls to do so.  *See Layshock*, 650 F.3d at 219 ("We need not now define the precise parameters of when the arm of authority can reach beyond the schoolhouse gate"); *see also id.* at 219-20 (Jordan, J., concurring) (noting that the court

---

[1] Plaintiff also appears to rely on one out-of-circuit district court decision [*See* Doc. 57 at (citing *Sagehorn v. Indep. Sch. Dist. No. 270*, 122 F. Supp. 3d 842 (D. Minn. 2015)].  Like *Layshock* and *J.S. ex rel. Snyder*, however, *Sagehorn* is "irrelevant to the 'clearly established' inquiry."  *See Ashford*, 951 F.3d at 804.

11

did not agree on whether "the Supreme Court's decision in *Tinker*" is "applicable to off-campus speech"). And *J.S. ex rel. Snyder* only "assume[d], without deciding, that *Tinker* applie[d]" to off-campus speech. *See J.S.*, 650 F.3d at 926. Five judges would have held that *Tinker* did not apply off-campus. *See id.* at 936-37 (Smith, J., concurring). *Layshock* and *J.S. ex rel. Snyder*, are therefore "irrelevant to the 'clearly established' inquiry" here. *See Ashford*, 951 F.3d at 804.

Finally, *Mahanoy* did not clearly establish Plaintiff's right to the off-campus speech at issue. In fact, the Supreme Court disclaimed any attempt to "set forth a broad, highly general First Amendment rule." *See Mahanoy*, 594 U.S. at 189. Indeed, while recognizing that "[t]he school's regulatory interests *remain significant* in some off-campus circumstances," *Mahanoy* only posited "three features of off-campus speech that *often*, *even if not always*, distinguish schools' efforts to regulate [off-campus] speech from their efforts to regulate on-campus speech." *Id.* at 188-90 (emphasis added). *First*, the Supreme Court noted that schools "*rarely* stand in loco parentis" "in relation to off-campus speech." *Id.* at 189 (emphasis added). *Second*, the Court cautioned that courts "must be more skeptical of a school's efforts to regulate off-campus speech." *Id.* at 189-90. *Last*, the Court noted "the school itself has an interest in protecting a student's unpopular expression, especially when the expression takes place off campus." *Id.* at 190. In applying these principles, the Majority, Concurrence, and Dissent understood the Supreme Court's holding as merely "one example." *Id.* at 190; *see also id.* at 195-96 (Alito, J., concurring); *Id.* at 219 (Thomas, J., dissenting) (noting that the Majority "identifies this case as an 'example' and 'leav[es] for future cases" further doctrinal development).

As pertinent here, *Mahanoy* did not tackle a context where a student's off-campus speech directly targeted a school administrator. *See id.* at 191. *Mahanoy* declined to address the precise question of "whether or how ordinary First Amendment standards must give way off campus to a

school's special need to prevent, *e.g.*, substantial disruption of learning-related activities *or the protection of those who make up a school community*." *See id.* at 189 (emphasis added). As such, *Mahanoy* did not clearly establish Plaintiff's rights sufficient to overcome the qualified immunity defense. *See Taylor*, 11 F.4th at 490 (citations omitted).

It was not until *Kutchinski v. Freeland Cmty. Sch. Dist.*, 69 F.4th 350 (6th Cir. 2023), that "the 'contours of [Plaintiff's] right[s]' were sufficiently clear." *See Ramsey*, 110 F.4th at 866 (quotation omitted). There, the Sixth Circuit described the analytical framework to apply where a student's off-campus speech targets a specific school administrator. *See Kutchinski*, 69 F.4th at 357-360. Accordingly, Defendants Quick and Crutchfield are entitled to qualified immunity as to Claims One and Two.

### ii. Defendants Quick and Crutchfield Are Entitled to Qualified Immunity As to Claim Three.

Defendants Quick and Crutchfield are also entitled to qualified immunity as to Claim Three. Claim Three alleges that Defendants Quick and Crutchfield violated Plaintiff's "Fourteenth Amendment right to an unbiased decisionmaker" [*See* Doc. 36 ¶¶ 180-81]. "[S]tudents facing suspensions of ten days or fewer have a property interest in their reputations" that qualifies "them for protection against arbitrary suspensions under the Due Process Clause." *See Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) (citing *Goss v. Lopez*, 419 U.S. 565, 576 (1975)). These protections, however, need not include "trial-type procedures." *Id.* (citation omitted). The Due Process Clause "requires only minimal procedural protections" necessary to provide "rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary suspensions from school." *Id.*

The Sixth Circuit has held that a school administrator "responsible for deciding whether to exclude a student from school" must not be "manifestly compromised." *See Doe v. Miami Univ.*,

882 F.3d 579, 601 (6th Cir. 2018). For example, a school administrator who expresses animus in the decision-making process violates due process. *See id.* at 587 (finding that a plaintiff had stated a plausible procedural due process claim when an administrator made statements indicating that she had animosity toward the plaintiff). And a school administrator who makes the decision to suspend a student for an improper personal purpose violates due process. *See Heyne*, 655 F.3d at 567-68 (finding a plausibly alleged procedural due process violation where an administrator "allegedly admitted that he decided to suspend [the plaintiff] to 'cover' himself" "from liability for [an] incident").

This due process protection against a "manifestly compromised" decisionmaker, however, "does not preclude many common school disciplinary practices." *See id.* at 566-67 (citation omitted). "[I]t is both impossible and undesirable for administrators involved in incidents of misbehavior ***always to be precluded*** from acting as decisionmakers." *See id.* at 567-68 (emphasis added). For example, "due process does not necessarily bar a school official who witnesses student misconduct from deciding to suspend the student." *See id.* at 567-68 (citing *Goss*, 419 U.S. at 584). And "a school official with personal knowledge of the grounds for discipline might serve as the hearing officer, consistent with the requirements of due process." *See id.* (citing approvingly *Schaill by Kross v. Tippecanoe Cnty. Sch. Corp.*, 864 F.2d 1309, 1324 (7th Cir. 1988)). Further, there is no due process violation where a student "injure[s] the [administrator] who [then] decided to suspend" him. *See id.* (citing approvingly *C.B. by and through Breeding v. Driscoll*, 82 F.3d 383, 385, 387 n.3 (11th Cir. 1996)).

Further, under Sixth Circuit precedent, "even if a due-process violation" occurs, a plaintiff "is precluded from mounting a procedural-due-process claim" where he does "not disput[e] the charges against him" or "his noncompliance" with the relevant requirements. *See Shoemaker v.*

14

*City of Howell*, 795 F.3d 553, 563 (6th Cir. 2015) (citing *Graham v. Mukasey*, 519 F.3d 546, 549-50 (6th Cir. 2008)). The same holds true where a student "admit[s] all of the essential facts which it is the purpose of a due process hearing to establish." *See id.* (citing approvingly *Black Coal. v. Portland Sch. Dist. No. 1*, 484 F.2d 1040, 1045 (9th Cir. 1973)).

Here, Defendants Quick and Crutchfield are entitled to qualified immunity on Claim Three. That Claim includes no factual allegations establishing why Defendants Quick and Crutchfield were "manifestly compromised" [*See* Doc. 36 at 27-30]. *See also Doe*, 882 F.3d at 601; *Heyne*, 655 F.3d at 566-68. Instead, Claim Three seems to rely on the proposition that Defendant Quick was manifestly compromised, as a matter of law, because he was "the subject of" the Instagram posts [*See id.* ¶ 177-78]. But that is not the law in the Sixth Circuit, so Claim Three fails to plausibly allege a procedural due process claim. And even if it were the law now, Plaintiff has not shown that the right not to be suspended by an administrator who was the "subject of" misconduct was clearly established as of August 2022.

Further, under *Shoemaker*, even if Defendants Quick and Crutchfield violated Plaintiff's procedural due process rights, Plaintiff cannot successfully establish a procedural-due-process claim because he admitted to posting the images that served as the bases for his suspension. *See* 795 F.3d at 563. By admitting to posting the relevant Instagram images, Plaintiff admitted "all of the essential facts which it is the purpose of a due process hearing to establish." *Id.* (citation omitted). Accordingly, no procedural due process violation occurred. And even if a violation occurred, (1) the right was not clearly-established in August 2022 and (2) *Shoemaker* would preclude Plaintiff from bringing Claim Three because he admitted "all of the essential facts" to be established at the hearing. Defendants Quick and Crutchfield are therefore entitled to qualified immunity as to Claim Three.

15

### B. Claim Eight Fails To State A Procedural Due Process Claim Against Defendant Tullahoma.

The factual allegations in Claim Eight against Defendant Tullahoma are co-extensive with Claim Three against Defendants Quick and Crutchfield [*See* Doc. 36 ¶ 237 (noting that Defendant Tullahoma's "actions violated [Plaintiff's] rights for the reasons stated in Claim III")]. As explained above, the Amended Complaint fails to plausibly allege a procedural due process violation with respect to the actions described in Claim Three. The Court therefore dismisses Claim Eight against Defendant Tullahoma. *See Kovalchuk v. City of Decherd*, 95 F.4th at 1038.

### C. Claims Five, Six, And Seven Fail To Present A Live Case or Controversy.

Because Plaintiff has graduated from Tullahoma High School and his suspension has been permanently expunged from his school record, Claims Five, Six, and Seven fail to present a live case or controversy. A claim generally becomes moot when it "has lost its character as a present, live controversy." *In Re Flint Water Cases*, 63 F.4th 486, 498 (6th Cir. 2023) (citation and quotations omitted). "The test for mootness is whether the relief sought would, if granted, make a difference in the legal interests of the parties." *Id.* (citations and quotations omitted). The Sixth Circuit recently held that a plaintiff who seeks solely "a declaratory judgment regarding events that already occurred" lacks standing to raise that claim. *See Diei v. Boyd*, ---F.4th----, 2024 WL 4211967, at *2 (6th Cir. Sept. 17, 2024). Whether decided on mootness or standing grounds, the conclusion is the same, the Court lacks subject matter jurisdiction over a claim when there is no "Case[]" or "Controvers[y]." *See* U.S. Const. art. III, § 2.

Here, Plaintiff has graduated from Tullahoma High School, so he is no longer subject to the Social Media or Wildcat Policies, which he asks the Court to declare are violative of the Constitution [*See* Docs. 36 at 32-39, 102, 103]. Thus, his requests for "retrospective declaratory relief" fail to present a live case or controversy. *See Diei*, ---F.4th----, 2024 WL 4211967, at *2.

16

And, to the extent any dispute remains, the Court finds that Plaintiff's suspension has been "permanently expunged from" his Tullahoma High School record [*See* Docs. 102 at 2, 103]. Thus, Plaintiff's requests for an injunction "expunging" his suspension or a declaration that the suspension violated the Constitution do not present a live controversy [*See* Doc. 36 at 32-39]. *See In Re Flint Water Cases*, 63 F.4th at 498. And Plaintiff acknowledges that Claims Five, Six, and Seven would be moot if Plaintiff's suspension were "permanently and irrevocably removed from his record" [Doc. 103 at 3]. Accordingly, the Court dismisses Claims Five, Six, and Seven.

### D. Claim Nine Does Not Survive.

In Claim Nine, Plaintiff alleges that Defendants violated Plaintiff's procedural due process rights because they were "relying on *post hoc* rationalizations" to justify Plaintiff's suspension during litigation of this action [Doc. 36 ¶¶ 245-59 (citation and quotation marks omitted)]. Specifically, the Amended Complaint alleges that Defendants relied only on the three Instagram images described above when deciding to suspend Plaintiff in August 2022 but that Defendants later relied on other images during litigation to support the suspension [Doc. 36 ¶ 253]. A state actor's reasons "for interfering with First Amendment rights" "must be genuine, not hypothesized or invented post-hoc in response to litigation." *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 n.8 (2022) (citation omitted). But it is unclear whether any changing rationalization ***in litigation*** amounts to an independent constitutional violation (and hence a cause of action) or only requires that a court "limit[]" the actor "to raising the justifications it cited at the time it made the decision" when defending the underlying claim. *See Fox v. Washington*, 949 F.3d 270, 283 (6th Cir. 2020). In any event, even if there were a viable cause of action, Defendants Tullahoma, Quick, and Crutchfield agree that they are bound to rely solely on the three Instagram posts in defending the suspension [*See* Docs. 51 at 23, 53 at

17

24, 61 at 22].  And Plaintiff recognizes that Defendants "disavow[]" that they based the suspension "on anything other than [Plaintiff's] Instagram posts" [*See* Doc. 57 at 35].  Further, Plaintiff only seeks "declaratory and injunctive relief" in Claim Nine [*See* Doc. 36 at 41-43].  Therefore, any cause of action that might exist and be alleged in Claim Nine is now moot.  *See In Re Flint Water Cases*, 63 F.4th at 498 (citation omitted).  Accordingly, the Court dismisses Claim Nine.

### E.  Claim Four Survives.

Claim Four, however, plausibly asserts a First Amendment free speech claim against Defendant Tullahoma.  It is axiomatic that "students do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'"  *See Kutchinski*, 69 F.4th at 356 (citing *Tinker*, 393 U.S. at 506).  But a student's free speech rights "are not automatically coextensive with the rights of adults in other settings." *Id.* (citing *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986)).  Instead, courts apply student free speech rights "in light of the special characteristics of the school environment." *Id.* (citation omitted).  In this context, school administrators "need a degree of flexible authority to respond to disciplinary challenges." *Id.* at 360 (citing *Morse v. Frederick*, 551 U.S. 393, 428 (2007)).  Otherwise, courts may inappropriately "substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.* (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)).

A school's regulatory authority remains "significant in [] off-campus circumstances" involving "serious or severe bullying or harassment targeting particular individuals [or] threats aimed at teachers or other students." *Id.* at 357.  In this setting, a school may "regulate the speech [of a student] and discipline [the student] so long as" the student (1) "bore some responsibility for the speech and" (2) "the speech substantially disrupted classwork (or Defendants

18

reasonably believed the speech would disrupt classwork)." *Id.* at 358 (citing *Mahanoy*, 594 U.S. at 201 (Alito, J., concurring)). For example, a school district could "reasonably forecast[]" that a "sexual and violent" social media post directed at a teacher or administrator "would substantially disrupt normal school proceedings." *See id.* at 359.

A student bears responsibility "for the harmful speech" when he "causes, contributes to, or affirmatively participates in" it. *Id.* at 358. As to substantial disruption, a school authority must "show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Id.* at 359 (citing *Tinker*, 393 U.S. at 509). But "*Tinker* does not require disruption to have actually occurred," "[n]or does *Tinker* require certainty that disruption will occur." *Id.* (citing *Lowery v. Euverard*, 497 F.3d 584, 592-93 (6th Cir. 2007)). All that a defendant must show is that it "reasonably forecast[ed]" a "material disruption to schoolwork and school discipline" because of the speech. *Id.* (citing *Barr v. Lafon*, 538 F.3d 554, 565 (6th Cir. 2008)).

Here, Claim Four plausibly alleges that Defendant Tullahoma's illegal "official policy" was the "moving force" behind the alleged violation of Plaintiff's First Amendment rights. *See Kovalchuk*, 95 F.4th at 1038 (quotations and citations omitted). Specifically, the Amended Complaint alleges that Defendant Tullahoma's "policy" of permitting student punishment "for engaging in nondisruptive, off-campus expression was the moving force behind" Plaintiff's suspension and the violation of his First Amendment rights [Doc. 36 ¶ 195 (citation omitted)]. Plaintiff also alleges that Defendants Quick and Crutchfield acted pursuant to that official "policy" [*Id.*]. Further, the Amended Complaint plausibly alleges that Defendants Quick and Crutchfield acted with final decision-making authority in suspending Plaintiff [*Id.* ¶¶ 191-93]. Taking the allegations of the Amendment Complaint as true, Tullahoma High School "did

19

not experience material disruption or substantial disorder due to" Plaintiff's posts [Doc. 36 ¶ 41]. And "[u]pon information and belief," at the time Plaintiff was suspended, "Tullahoma High School did not receive complaints from students or staff abouts the posts, classes were not cancelled or interrupted due to the posts, and no one reported feeling harassed or threatened by the posts" and Defendant Tullahoma "had not received information which would have led it to reasonably forecast a material disruption" or "substantial disorder" [*Id.* ¶¶ 43, 45]. As such, Claim Four plausibly alleges that Defendant Tullahoma, acting through an official with final decision-making authority, violated Plaintiff's First Amendment rights. *Cf. Kutchinski*, 69 F.4th at 358 (citation omitted).

In seeking judgment under Rule 12(c), Defendant Tullahoma asks the Court to take "judicial notice" of certain internet sources, which potentially indicate that Plaintiff's Instagram posts could be viewed as carrying violent and sexual meanings that might permit Defendant Tullahoma to regulate his off-campus speech under prevailing law [*See, e.g.*, Doc. 53 at 6-10 n.1-4]. Even if it were appropriate for the Court to take judicial notice of these sources, Defendant Tullahoma ultimately asks the Court to make factual inferences in its favor at the Rule 12 stage. It essentially asks the Court to find that high school students and school administrators would understand and interpret Plaintiff's Instagram posts in a certain way—one that implies the posts contain violent or sexual meaning. But the law does not permit the Court to do so. *See United Food & Com. Workers*, 51 F.4th at 202 (citation omitted). Instead, in assessing Defendant Tullahoma's Motion as it relates to Claim Four, the Court takes the Amended Complaint's factual allegations as true and draws all reasonable inferences in Plaintiff's favor. Therefore, the Court cannot assess that any of Plaintiff's Instagram posts involved "serious or severe bullying or harassment targeting particular individuals" or "threats aimed at" an administrator.

20

*See Kutchinski*, 69 F.4th at 357.  Nor can the Court determine that Tullahoma High School students would understand any of Plaintiff's Instagram posts as sexual or violent such that Defendant Tullahoma could reasonably forecast a substantial disruption to the educational environment. *See id.* at 359.  Accordingly, Claim Four survives.

IV.    <u>**Conclusion**</u>

For the reasons set forth above, the Court **GRANTS** the "Motion for Judgment on the Pleadings" filed by Defendants Jason Quick and Derrick Crutchfield [Doc. 50] and dismisses Plaintiff's claims against them.  The Court further **GRANTS in PART and DENIES in PART** Defendant Tullahoma City Schools's "Motion to Dismiss and Motion for Judgment on the Pleadings" [Doc. 52].  Only Claim Four against Defendant Tullahoma remains.

SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge

21