UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| I.P.[1], | ) |
|---|---|
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 4:23-CV-26-KAC-MJD |
| | ) |
| TULLAHOMA CITY SCHOOLS, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This action is before the Court on a (1) "Motion for Summary Judgment on Liability as to Claim IV" filed by Plaintiff I.P. [Doc. 121] and (2) "Corrected Motion for Summary Judgment" filed by Defendant Tullahoma City Schools [Doc. 124-1]. The Court **DENIES** both Motions.

**I.  Background**

  **A.  Factual Background**[2]

Defendant Tullahoma City Schools is a school district that includes Tullahoma High School ("THS") [*See* Doc. 120-8 at 55 (Deposition of Jason Quick ("Quick Dep.") 55:11-22)]. Plaintiff I.P. is a former student who graduated from THS in 2024 [Doc. 122-5 at 4 (Deposition of I.P. ("I.P. Dep.") 15:4-16:13)].

---

[1] Defendant asked the Court to "dismiss" B.P. because I.P. has now "reached the age of majority" [Doc. 124-2 at 20]. Plaintiff "does not object to the School District's request to remove his mother, B.P., from this case" [*See* Doc. 127 at 24 n.14]. With no opposition, the Court removes B.P. from the caption of this action. *See* E.D. Tenn. L.R. 7.2.

[2] Because the Court must "view all facts and inferences in the light most favorable to the nonmoving party," *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003), "unique issues" are posed when, as here, parties file cross-motions for summary judgment, *see B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001). Many of the facts in this case are not in dispute. Where there are facts in dispute, the Court views and describes the facts in the light most favorable to the nonmoving party for each distinct Motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

During the 2022-2023 school year, Plaintiff was a junior at THS [*See* Doc. 122-11 at 7 (Deposition of R.Y. 14:17-21); *see also* Docs. 120-1 at 73 (I.P. Dep. 73:14-16), 1 ¶ 8]. At that time, THS had a written official policy that subjected students to "disciplinary action," "including suspension," if a student "disseminat[ed]" an image "for the purpose of embarrassing, demeaning, or discrediting the reputation of any student or staff or that results in the embarrassment, demeaning, or discrediting of any student or staff, or results in any action or activity disruptive to the educational process" [Doc. 122-14 at 11 (THS Student and Parent Handbook ("Handbook") at 9)]. "Using social media" in an unauthorized way could also "result in discipline" [*Id.* at 10 (Handbook at 8)].

On "average," "three" (3) to "four" (4) times a year, it would come to a THS "administrators' attention" that students were making "depictions" of other students that were then "circulating" at THS [*See* Doc. 120-8 at 99, 101 (Quick Dep. 99:3-20, 101:1-5)]. The images were "usually" "sexual in nature" or relating to a female's "appearance," which "embarrass[ed]" the student depicted in the image [*Id.* at 100, 104-05 (Quick Dep. 100:9-20, 104:16-105:6)]. Sometimes, the student depicted would report the image to the "administration" or the image would cause a "distraction" in the "hallway" or "in the classroom" because students were "no longer listening, participating," and "doing their work" [*Id.* at 99 (Quick Dep. 99:3-25)].

At the time relevant to this litigation, Jason Quick was Principal of THS [*Id.* at 31 (Quick Dep. 31:11-14)]. Derrick Crutchfield and Dr. Renee Flowers were Assistant Principals [Doc. 120-6 at 13 (Deposition of Dr. Renee Flowers ("Flowers Dep.") 12:4-16); Doc. 120-5 at 74 (Deposition of Derrick Crutchfield ("Crutchfield Dep.") 73:20-24)].

While attending THS, Plaintiff was "not particularly fond" of Quick [Doc. 120-1 at 64-65 (I.P. Dep. 64:24-65:2)]. Sometime during Plaintiff's "junior year," there were "rumors going

2

around" about Quick that Plaintiff and "many other students" "believed" "to an extent" to be true [*Id.* at 48, 51 (I.P. Dep. 48:2-23, 51:13-25)]. One of the rumors involved an "alleged incident" where Quick said "I'm not your N word" to another student using "the actual N word" [*Id.* at 50 (I.P. Dep. 50:4-15)]. THS had a dress code that prohibited students from wearing "durags" and short skirts [*Id.* at 40 (I.P. Dep. 40:10-25); *see also* Docs. 120-8 at 182 (Quick Dep. 182:15-23), 122-14 at 14 (Handbook at 12)]. Students, including Plaintiff, generally did not think the dress code was "fair," and some viewed it as "sexist" or "racist" [Doc. 120-8 at 182-83 (Quick Dep. 182:15-183:24); *see also* Doc. 120-1 at 40 (I.P. Dep. 40:10-25)].

Plaintiff used social media to communicate. His Instagram handle was "atom_heart_fag" [Doc. 120-8 at 258 (Plaintiff's Instagram Profile)]. The biography section of his profile stated "You have nothing to lose but your cock and balls" [*Id.*] Plaintiff used his Instagram account to post three (3) images that are at issue in this action [*See* Doc. 120-1 at 59-60, 63-64, 68-69 (I.P. Dep. 59:17-60:3, 63:3-64:6, 68:17-69:3)].

On May 22, 2022, Plaintiff posted the first image at home during summer break [*See* Docs. 120-1 at 209-10 (I.P. Dep. 209:23-210:4); 1 ¶ 26]. The Image showed Quick "holding a box of vegetables with googly eyes" with the text "My Brotha" [Doc. 120-1 at 63 (I.P. Dep. 63:5-12)]. Plaintiff added the text, "like a sister but not a sister" and "On god" to the Image before posting it on Instagram [*Id.* at 63-65 (I.P. Dep. 63:9-65:9)]. Plaintiff's Instagram post ("Vegetable Image") is below [Doc. 122-2].

3

Case 4:23-cv-00026-KAC-MJD Document 159 Filed 12/23/25 Page 3 of 17
PageID #: 2809



The meaning of the Vegetable Image is in dispute. To Plaintiff, the phrase "like a sister but not a sister" means "you have a very close bond with someone" "so that they're like a sibling" [Doc. 120-1 at 65 (I.P. Dep. 65:7-14)]. And the phrase "on god" is "slang" Plaintiff used for "asserting the truth of something" [Id. at 64 (I.P. Dep. 64:11-20)]. Plaintiff thought the post was "iron[ic]" because everyone "kn[ew]" that Plaintiff was not "fond" of Quick and did not have a "familial bond with him" [Id. at 64-65 (I.P. Dep 64:21-65:2)]. To Quick, use of the phrase "on god" was "blasphemous," and he did not "like the terminology 'Brotha'" or being "referred to as a sister because that has demographic racial overtone that I [he] think society looks at" [Doc. 120-8 at 66 (Quick Dep. 66:1-11)].

On June 9, 2022, Plaintiff posted a second image while on vacation outside of school [See Docs. 1 ¶ 30, 120-1 at 60 (I.P. Dep. 60:4-13)]. Plaintiff received an image from a friend that depicted Quick "with cat ears," "whiskers," and "a star on his nose," wearing a "a maid outfit" surrounded by "heart[s]" and "sparkles" and included the text "Nya!" [Doc. 120-1 at 59 (I.P. Dep. 59:17-23)]. Plaintiff added the text "Neko quick" before posting the Image on Instagram [Id. at 60

4

Case 4:23-cv-00026-KAC-MJD    Document 159    Filed 12/23/25    Page 4 of 17
PageID #: 2810

(I.P. Dep. 60:8-23)]. Plaintiff's Instagram post ("Neko Quick Image") is below [Doc. 122-3].



The meaning of the Neko Quick Image is also in dispute. In the light most favorable to Plaintiff, the Image portrays Quick as feminine to "satiriz[e]" "the way that he presents himself as masculine" [Doc. 120-1 at 62 (I.P. Dep. 62:14-16)]. The term "Neko" comes "from memes about anime in Japan" [*Id.* at 62-63 (I.P. Dep. 62:22-63:2)]. It "mean[s] a person with cat-like features" such as "cat ears, a tail," and "whiskers" [*Id.* at 61 (I.P. Dep. 61:10-13)]. And "Nya" is the "sound a cat makes" [*Id.* at 59 (I.P. Dep. 59:19-23)]. Plaintiff thought it was "funny to see [his] principal . . . who presents himself as masculine and hardly feminine" contrasted "with typically feminine things edited on" [*Id.* at 61 (I.P. Dep. 61:14-19)].

Viewing the facts in the light most favorable to Defendant, Quick understood the Image to be a "romantic" and "sexual" depiction of him that invokes the concept of "furries," which Quick understood to be sexual in nature [*See* Doc. 120-8 at 74 (Quick Dep. 74:11-19)]. And at the

relevant time, to Quick, "Nya" "sound[ed] very sexual and very penetrating" [*Id.* at 81 (Quick Dep. 81:13-17)]. Quick explained, "to a male it would sound very—very—it would sound not heterosexual" [*Id.* at 81 (Quick Dep. 81:6-20)].

On August 2, 2022, Plaintiff posted a third image from his home [*See* Docs. 120-1 at 69 (I.P. Dep. 69:4-15); 1 ¶ 34]. School was back in session by then [*See* Doc. 1 ¶ 34]. He screenshotted an initial image that "show[ed] Quick's head edited onto" a "drawn" figure [Doc. 120-1 at 68-69 (I.P. Dep. 68:17-69:23)]. Plaintiff added a crying cartoon bird holding onto Quick and the caption "Nooo Jason Don't Le ave Me" before posting the Image to Instagram [*Id.* (I.P. Dep. 68:17-69:23)]. Plaintiff's Instagram post ("Among Us Image") is below [Doc. 122-4].



The meaning of the Among Us Image, too, is in dispute. According to Plaintiff, the Image depicts a "poorly drawn character" from a video game called "Among Us" that was "popular" [Doc. 120-1 at 68 (I.P. Dep. 68:17-20)]. In Among Us, characters called "crewmates" identify "the imposters," who are not a member of the group [*Id.* at 71 (I.P. Dep. 71:3-11)]. The goal of

6

the game appears to be for the crewmates to identify the imposters and "get rid of them" while the imposters try to "kill all the crewmates" [*See id.*]. The cartoon bird is "Mordecai," a character "from a childhood show" [*Id.* at 70-71 (I.P. Dep. 70:24-71:2)]. Mordecai is "distraught" and "pleading with" Quick to stay, which represents that Quick and Mordecai "have a very close bond" [*Id.* at 69-70 (I.P. Dep. 69:18-70:2)]. To Plaintiff, this was "funny" because it is "absurd[]" [*Id.*]. Quick's reaction to the Among Us Image was "[c]onfusion" [Doc. 120-8 at 87 (Quick Dep. 87:7-25)]. But he "didn't like" the Image and he thought that "there could be some negative connotation" or "sexual overtone" based on context [*Id.* at 87-88 (Quick Dep. 87:7-88:24)].

On August 10, 2022 during a "free period" at THS, a student A.L. received an anonymous "AirDrop" of two other images to her phone [Doc. 122-10 (Declaration of A.L. ("A.L. Decl.")) ¶¶ 4-8, 14)]. One was an image of "Quick edited onto a photograph of members of the Ku Klux Klan" "with a burning cross" ("KKK Image") [*See* Docs. 122-5 at 11 (I.P. Dep. 55:9-11); 122-10 at 2 (A.L. Decl. ¶ 8)]. The second depicted "Quick edited onto a photograph of Adolf Hitler" ("Hitler Image") [Doc. 122-10 at 2 (A.L. Decl. ¶ 7)]. A.L. reported these other images to Quick [*Id.* at 3 (A.L. Decl. ¶¶ 14-16)]. She both showed Quick the other images and emailed them to him [*Id.* (A.L. Decl. ¶ 15)]. A.L. also told Quick that she "overheard another student" R.Y. "talk about images of Mr. Quick that day and say the name 'L,'" a nickname Plaintiff used [*See id.* (A.L. Decl. ¶¶ 16)]. A.L. told Quick that "I [she] overheard R.Y. say that L had posed images of Mr. Quick on Instagram" [*Id.* (A.L. Decl. ¶ 17)].

R.Y. showed Quick and Dr. Flowers Plaintiff's Instagram profile, which displayed the Vegetable Image, Neko Quick Image, and Among Us Image [Doc. 120-8 at 104 (Quick Dep. 104:1-15); *see also* Doc. 122-13 at 2-3]. Viewed in the light most favorable to Defendant, R.Y. also told Quick that "L" made the KKK Image and Hitler Image [*See* Doc. 120-8 at 158-59

7

(158:15-159:20)]. When Quick and Crutchfield confronted Plaintiff, he "denied making" the KKK Image and Hitler Image [*Id.* at 159-60 (Quick Dep. 159:21-160:3)]. But he admitted to posting the Vegetable Image, Neko Quick Image, and Among Us Image [Doc. 120-5 at 60 (Crutchfield Dep. 59:8-17)]

At the time, Quick and Crutchfield believed that at least the Among Us Image and the Neko Quick Image could cause a substantial disruption at THS [*See e.g.*, Doc. 120-5 at 131 (Crutchfield Response to Interrogatories at 5); *see also* Doc. 120-8 at 77-78 (Quick Dep. 77:24-78:11)]. Quick believed that the Among Us Image could "attract attention" and distract THS students "from their lessons" [Doc. 120-8 at 96 (Quick Dep. 96:6-24)].

Quick and Crutchfield thought the Neko Quick Image would portray Quick "in a bad light," which would make it "difficult for him to do his job" [*See* Doc. 120-5 at 59-60 (Crutchfield Dep. 58:24-59:5); Doc. 120-5 at 133 (Crutchfield Response to Interrogatories at 7)]. Quick was "embarrassed" by the Image [Doc. 122-7 at 9 (Quick Dep. 73:12-13)]. Quick also thought it would cause "disruption in the classroom and in the hallways" because "it's a depiction of someone in a very unflattering, sexually contextualized" way [Doc. 120-8 at 77-78 (Quick Dep. 77:24-78:11)]. Crutchfield was "concerned" that the Image would "offend" a particular "male student" at THS "who wore skirts to school every day" because it might make that student think "Mr. Quick was making fun of him" [Doc. 120-5 at 43 (Crutchfield Dep. 43:9-20)]. The Vegetable, Neko Quick, and Among Us Images did not cause an actual substantial disruption at THS [*See* Doc. 122 at 23; *see also* Docs. 124-2 at 9, 120-9 at 122-123 (Quick Dep. 122:17-123:11)].

At Quick's direction, Crutchfield suspended Plaintiff for five (5) days [Doc. 120-5 at 134 (Crutchfield Response to Interrogatories at 8)]. Crutchfield later reduced the suspension to three (3) days [*Id.*].

8

Plaintiff's mother emailed Quick, asking "what evidence" and "specific rules" the school "rel[ied] upon" to suspend Plaintiff [*See* Doc. 122-13 at 3-4]. Quick responded on August 16, 2022, indicating that Plaintiff was suspended for violating a portion of the Handbook regarding disseminating images "for the purposes of embarrassing, demeaning, or discrediting the reputation of any student or staff, or that results in the embarrassment, demeaning, or discrediting of any student or staff, or results in any action or activity disruptive to the educational process" [*See id.* at 2]. The "evidence" relied on was that Plaintiff "admitted to creating at least three of the images that were located on his Instagram page" [*Id.*]. "The focus of the concern was on images being created by [Plaintiff] to which he admitted to three," not on the KKK or Hitler Image Plaintiff denied making [*See id.* at 3].

### B. Procedural Background

Plaintiff filed his operative "Amended Complaint" against Quick, Crutchfield, and Defendant Tullahoma City Schools [Doc. 36]. In representations made before the Court in earlier briefing to secure dismissal of a claim, Defendants "agreed that they are bound to rely solely on the three Instagram posts in defending the suspension" [Doc. 109 at 17 (citing Docs. 51 at 23, 53 at 24, and 61 at 22)]. Defendant Tullahoma City Schools specifically stated that "Quick did not rely on the Hitler/KKK memes and stated such when he was asked the reasons for the suspension. The School is not offering a shifting rationale for the suspension issued, it is offering additional information about the events that led to the suspension" [Doc. 53 at 24]. The Court also dismissed Plaintiff's First Amendment claims against Quick and Crutchfield based on qualified immunity because the right at issue was not "clearly established" in August 2022 [*See* Doc. 109 at 9-13].

9

Only a "*Monell* Claim for Violation of [the] First Amendment [under] 42 U.S.C. § 1983" against Defendant remains [*See* Docs. 36 at 29, 109].

Before the Court now are the Parties' cross-motions for summary judgment [*See* Docs. 121, 124-1]. Plaintiff seeks summary judgment on liability. He argues that Defendants could not reasonably forecast a "substantial disruption" based on the Vegetable, Neko Quick, and Among Us Images [*See* Docs. 121, 122]. Defendant opposed [Doc. 126]. Plaintiff replied [Doc. 129].

Defendant's argument is broader. First, it argues that the Court should grant it summary judgment because "the Court granted qualified immunity" to Quick and Crutchfield "whose actions served as the predicate" for the remaining *Monell* claim. Second, it argues that Plaintiff did not engage in protected speech at all, asserting that some of the Vegetable, Neko Quick, Among Us, KKK, and Hitler Images constitute obscenity or incitement as a matter of law. Finally, Defendant argues that even if Plaintiff engaged in protected speech, Defendant reasonably forecasted "substantial disruption," again based on an amalgamation of the Vegetable, Neko Quick, Among Us, KKK, and Hitler Images [*See* Docs. 124-1, 124-2]. Plaintiff opposed [Doc. 127]. Defendant replied [Doc. 128].[3]

---

[3] Defendant filed a supplemental brief "to address" *B. A. v. Tri Cnty. Area Schs.*, 156 F.4th 782 (6th Cir. 2025) [Doc. 145]. *See* L.R. 7.1(d). Defendant argues that by applying the so-called "*Fraser* exception" for "vulgarity" to on-campus student speech, *Tri County Area Schools* "supports" Defendant's position that it lawfully disciplined Plaintiff for "posting" "disparaging, vulgar" or "suggestive" content [Doc. 145 at 1-4 (citation omitted)]. Plaintiff responded [Doc. 146]. Neither *Fraser* nor *Tri County Area Schools* controls here because the purportedly lewd or vulgar speech was made off campus, not on campus. *See Kutchinski as next friend to H.K. v. Freeland Cmty. Sch. Dist.*, 69 F.4th 350, 356-57 (6th Cir. 2023) (articulating a narrow *Fraser* exception for "indecent, offensively lewd, or vulgar speech uttered . . . on school grounds"); *see also Tri Cnty. Area Schs.*, 156 F.4th at 789 (describing the exception as applying "[o]n school grounds" because the "Constitution doesn't hamstring school administrators when they are trying to limit profanity and vulgarity in the classroom during school hours").

10

## II. Analysis

Under Federal Rule of Civil Procedure 56, the Court shall "grant summary judgment" only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Jackson v. United States Postal Serv.*, 149 F.4th 656, 666 (6th Cir. 2025). A dispute over a material fact is a "genuine issue" if a reasonable jury could find for the nonmoving party on that issue. *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The standard is "the same for reviewing cross-motions for summary judgment." *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 441-42 (6th Cir. 2021) (citation omitted)). The Court "evaluat[es] each" motion "on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quotations omitted). The moving party in each instance bears the burden of showing that no genuine dispute of material fact exists. *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 517 (6th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986)). The Court refrains from "weigh[ing] the evidence and determin[ing] the truth of the matter," only deciding "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 249, 251-52 (1986).

At the outset, Defendant argues that it is entitled to summary judgment because "the Court granted qualified immunity" to Quick and Crutchfield [Doc. 124-2 at 19]. Defendant misunderstands the Court's prior ruling and the law. The Court previously concluded that qualified immunity shielded Quick and Crutchfield because the Amended Complaint failed to allege violations of a First Amendment right that was ***clearly established*** in August 2022 [Doc. 109 at 9-13]. Defendant is not entitled to claim qualified immunity. *See Getz v. Swoap*, 833 F.3d 646, 652

11

(6th Cir. 2016). And the Court's conclusion that the rights at issue were not clearly established in August 2022 does not bear on Defendant's liability. *See Kovalchuk v. City of Decherd, Tenn.*, 95 F.4th 1035, 1038 (6th Cir. 2024) (describing elements for *Monell* liability). So this argument fails.

The main issue presented by the Parties' cross-motions is whether Defendant violated Plaintiff's First Amendment rights when it suspended him. Students do not "forfeit their First Amendment rights when they choose to attend public school to satisfy their state-mandated educational obligations." *Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, 158 F.4th 732, 745 (6th Cir. 2025) (en banc) (citations omitted); *see also Kutchinski*, 69 F.4th at 356. But school officials have "a degree of flexible authority to respond to disciplinary challenges" in the school context. *Kutchinski*, 69 F.4th at 360 (quotation omitted).

The law does not prescribe "a uniform, one size fits all approach" to student speech. *See Defending Educ.*, 158 F.4th at 753 (cleaned up). The First Amendment inquiry turns "on the **content** and **context** of the speech at issue." *See id.* (emphasis added) (internal quotation omitted); *see also Castorina ex rel. Rewt v. Madison Cnty. Sch. Bd.*, 246 F.3d 536, 544 (6th Cir. 2001). "The Supreme Court has outlined four categories of student speech that schools may regulate: (1) indecent, offensively lewd, or vulgar speech uttered . . . on school grounds;" (2) certain speech "reasonably regard[ed] as promoting illegal drug use;" (3) "speech in school-sponsored expressive activities if the schools' actions are reasonably related to legitimate pedagogical concerns;" and (4) "on-campus and some off-campus speech that materially disrupts classwork or involves substantial disorder or invasions of the rights of others." *Kutchinski*, 69 F.4th at 356-57 (cleaned up). "Because this case involves off-campus speech, it implicates the fourth category." *See id.*

A school's authority to regulate off-campus, as opposed to on-campus, speech is generally "diminish[ed]," but a "school's regulatory interests remain significant" if off-campus speech

12

involves "serious or severe bullying or harassment targeting particular individuals or threats aimed at teachers or other students." *Id.* at 357 (cleaned up). In those instances, a school may "regulate" a student's speech if (1) the student bears "some responsibility for the speech"[4] and (2) the "speech substantially disrupted classwork (or Defendant[] reasonably believed the speech would disrupt classwork)." *Kutchinski*, 69 F. 4th at 358-59. This requires more than an "undifferentiated fear or apprehension" that disruption might occur. *See id.* at 359 (citation and quotation omitted); *Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 594 U.S. 180, 193 (2021). A "'mere desire to avoid the discomfort and unpleasantness'" associated with speech is insufficient "'to overcome the right to freedom of expression.'" *Mahanoy Area Sch. Dist.*, 393 U.S. at 193 (quoting *Tinker*, 393 U.S. at 508-09).

As an initial matter, the speech to be assessed in this case is the three (3) Images Plaintiff posted to Instagram that Defendant relied on in suspending him—the Vegetable, Neko Quick, and Among Us Images. Shortly after the suspension, Defendant, through decisionmaker Quick, indicated that it relied on these three Images to support Plaintiff's suspension [*See* Doc. 122-13]. And Quick confirmed that neither the KKK Image nor the Hitler Image was the "focus of the concern" [*Id.*]. In litigation too, Defendant indicated to the Court that it would not rely on the KKK or Hitler Images to support the suspension, averring that these other images were only offered as "additional information about the events that led to the suspension" [*See* Doc. 53 at 24]. "Once litigation commences, a party typically is bound by its action, whether it be a statement in a pleading, an admission during discovery, or an argument to the court by its counsel." *Borror Prop. Mgmt., LLC v. Oro Karric N., LLC*, 979 F.3d 491, 495 (6th Cir. 2020) (citations omitted));

---

[4] A student bears responsibility for speech that he "causes, contributes to, or affirmatively participates in." *See id.* at 358. Plaintiff bears responsibility for the Vegetable, Neko Quick, and Among Us Images that he admitted to posting [*See* Doc. 120-1 at 81-82 (I.P. Dep. 81:22-82:8)].

13

*see also MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997) (concluding that an attorney's "deliberate, clear, and unambiguous" statements are "judicial admissions"). Defendant is bound by its concessions and representations here.[5]

Properly framed then, the crux of the cross-motions is whether Defendant could reasonably predict that the Vegetable, Neko Quick, and Among Us Images would cause a "material and substantial disruption to schoolwork and school discipline." *See Kutchinski*, 69 F.4th at 359 (cleaned up). Genuine disputes of material fact regarding how students and administrators would understand and respond to these Images preclude summary judgment for either Party.

Take Defendant's arguments first. Defendant initially argues that these Images fall outside of the First Amendment's ambit because they constitute incitement or obscenity. And it argues that even if the speech were protected, Defendant could reasonably predict substantial disruption at THS based on the speech. It views the Among Us Image as invoking violence because students "could have interpreted" it as portraying Quick as a "[c]rewmate who was the victim of a violent murder" [*See* Doc. 124-2 at 16]. Defendant further argues that the Neko Quick Image presented Quick in a "sexual" manner because "Neko" may refer to "a Japanese slang term" for the "submissive" "partner in a homosexual relationship" or alternatively relate to transgenderism [*Id.* at 12]. Defendant asserts that this "homophobic" or "transphob[ic]" portrayal of Quick could be viewed as bullying a "male student" at THS who wore skirts [*Id.* at 11, 12, 16].

Viewing the facts in the light most favorable to Plaintiff, however, images of Quick (1) holding vegetables with eyes, (2) as a poorly-drawn video game character being hugged by a

---

[5] Even if Defendant were not bound by these concessions, it is, there would be a genuine dispute of material fact regarding whether Plaintiff bears responsibility for the KKK and Hitler Images because he denied making them and there is not other undisputed evidence establishing legal responsibility [*Compare* Doc. 120-1 at 126 (I.P. Dep. 126:1-7) *with* Doc. 120-5 at 60 (Crutchfield Dep. 60:23-24)]. *See Kutchinski*, 69 F.4th at 358.

14

Case 4:23-cv-00026-KAC-MJD   Document 159   Filed 12/23/25   Page 14 of 17
PageID #: 2820

cartoon bird, and (3) dressed as a "feminine" cat-person do not rise to the level of obscenity or incitement. Similarly, the Court cannot conclude as a matter of law that these Images, individually or collectively, are so "sexual," "violent," "bullying[,] or harass[ing]" that Defendant could reasonably forecast a substantial disruption based on them. *See Kutchinski*, 69 F.4th at 354-59 (concluding that defendant reasonably forecasted substantial disruption when a student posted "sexual and violent" photos and videos impersonating teachers with the captions "#gangbanged my wife with 4 other men," "[b]est sex in a Pet Smart #big #throbbing #14inches #raw," and discussed "strangl[ing]" and running over another student with a "fucking car" and "crush[ing] [h]is skull"). And even if an image of Quick in a dress could "offend" a male student at THS who "wore skirts," that would not by itself meet the demanding standard for substantial disruption under the law. *See Mahanoy Area Sch. Dist.*, 594 U.S. at 185, 192-193 (concluding that substantial disruption did not occur even where "several" students were "visibly upset" about the speech and "questions" regarding the speech "persisted" in the classroom for "days"). "America's public schools are the nurseries of democracy." *Id.* at 181. "Thus, schools have a strong interest in ensuring that future generations understand the workings in practice of the well-known aphorism, 'I disapprove of what you say, but I will defend to the death your right to say it.'" *Id.*

Now take Plaintiff's argument. Plaintiff argues that the Images are merely satire and unflattering to Quick and that Defendant could not have reasonably predicted a substantial disruption. But viewing the facts in the light most favorable to Defendant, Quick believed that the Neko Quick Image sexualized him, implied that he was homosexual, and invoked "furries," which Quick understood to be sexual [Doc. 120-8 at 74, 81 (Quick Dep. 74:11-19, 81:6-20)]. Given the feminization of Quick in the Neko Quick Image and the sexually explicit language on the Instagram profile Plaintiff posted the Image from, a jury could reasonably construe the

15

Neko Quick Image that way.

Context matters too.  *See Defending Educ.*, 158 F.4th at 75.  The record shows instances of distraction from schoolwork at THS caused by students posting sexual depictions that circulated among the student body [*See* Doc. 120-8 at 99 (Quick Dep. 99:3-25)].  *See Barr v. Lafon*, 538 F.3d 554, 565 (6th Cir. 2008) (noting that courts often "focus[] on whether" the speech "would likely trigger disturbances such as those experienced in the past").  Tensions that already existed between Quick and the student body provide a backdrop for assessing whether Defendant could reasonably forecast that the Images, all involving Quick, would cause a substantial disruption.  *See e.g.*, *Defoe ex rel. Defoe v. Spiva*, 625 F.3d 324, 335-36 (6th Cir. 2010) (considering "tension" then "occurring" at the school).  The strength of this argument is blunted somewhat by the significant amount of time the Neko Quick Image had already been public.  But once school was back in session, "[s]chools contain a captive audience filled with immature students." *See Defending Education*, 158 F.4th at 749 (internal quotation omitted).  A reasonable jury could conclude that Defendant reasonably predicted substantial disruption at THS caused by an image portraying Quick as homosexual and in a sexualized way.

In the end, the record presents a genuine dispute of material fact regarding the meaning of the Vegetable, Neko Quick, and Among Us Images—how students and administrators would understand and respond to these Images.  This prevents the Court from granting summary judgment to either Party. *See Castorina*, 246 F.3d at 544 (emphasizing the "importance of the factual circumstances in school speech cases").

### III. Conclusion

For the above reasons, the Court **DENIES** (1) Plaintiff I.P.'s "Motion for Summary Judgment on Liability as to Claim IV" [Doc. 121] and (2) Defendant Tullahoma City Schools's "Corrected Motion for Summary Judgment" [Doc. 124-1].

SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge